IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GEORGE MOORE, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>NICOLE HUPP & ASSOCIATES, LLC<br><br>Defendant. | Case No. 23-cv-4334 |

**Plaintiff's Opposition to the Defendant's Motion to Stay Discovery**

In response to the Motion to Stay (Doc. 9) filed by defendant Nicole Hupp & Associates, LLC, Plaintiff states as follows:

**I. Summary of Plaintiff's Claims and Factual Background**

Mr. Moore has also alleged a violation of the TCPA's restrictions against calling people on the National Do Not Call Registry. "A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

"The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 649-50 (4th Cir. 2019).

Indeed, "[i]n the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) (certifying two classes). As the Seventh Circuit has observed, "[c]lass certification is normal [in TCPA cases] . . . because the main questions . . . are common to all recipients." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.,* 821 F.3d 992, 998 (8th Cir. 2016), *quoting Ira Holtzman, C.P.A. & Assoc., Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

Here, Mr. Moore alleges that Nicole Hupp & Associates, LLC ("Nicole Hupp") sent telemarketing calls to the Plaintiff and putative class members in order to generate business for Allstate and others, despite the fact that his number is on the National Do Not Call Registry. *See* Complaint, ECF No. 1. Mr. Moore never consented to the calls. *Id.* at ¶22. Nicole Hupp is an Allstate agent and business owner that has telemarketers contact potential customers for Allstate.

Mr. Moore's telephone number (the "Number"), 630-XXX-3200, is on the National Do Not Call Registry and has been continuously for years prior to the calls at issue. *Id.* at ¶ 26. That is a residential telephone number of the Plaintiff used for personal calls. *Id.* at ¶ 20. Despite that, the Plaintiff received at least two telemarketing calls from the Defendant on May 23 and 24, 2023. *Id.* at ¶ 22. The Plaintiff answered both calls. *Id.* at ¶ 24. The Plaintiff did not recognize the caller and terminated the first call on May 23, 2023 after hearing that the caller was attempting to solicit him for automobile insurance. *Id.* at ¶ 25. Yet the Defendant called again. *Id.* at ¶ 26. On this second call, the Defendant inquired about the Plaintiff's vehicle information and personal details regarding his potential insurance needs. *Id.* at ¶ 27.

As a result of this call, the Plaintiff spoke with "Miguel", who identified himself as working with Allstate. *Id.* at ¶ 28. "Miguel" continued to promote Allstate auto insurance services and inquired if the Plaintiff would like to purchase such a policy from him. *Id.* at ¶ 29. Mr. Moore inquired if he was with any agency. *Id.* at ¶ 30. "Miguel" identified himself as an Allstate agent that was an employee of the Defendant. *Id.* at ¶ 31. Indeed, the telemarketing call ended with "Miguel" emailing the Plaintiff from an Allstate.com email address, to follow up on the call with a written proposal for the sale of Allstate's automobile insurance. *Id.* at ¶ 32. The Plaintiff had not been shopping for Allstate automobile insurance or provided his consent to receive any such calls. *Id.* at ¶ 33.

Due to the *en masse* nature of the calling, the Plaintiff is pursuing the this matter on behalf of the putative class:

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

*Id.* at ¶ 40.

## II. The Court should Deny Defendant's Request to Stay Discovery Pending the Motion to Dismiss and/or Strike Class Allegations

The Court should deny the defendant's motion to stay the case. A party has no right to a stay, and the party seeking a stay bears the burden of proving that the Court should exercise its discretion to stay all or a portion of the case. *See Ind. State Police Pension Trust v. Chrysler LLC*, 556 U.S. 960, 961, 129 S. Ct. 2275, 173 L. Ed. 2d 1285 (2009). "Filing a motion to dismiss does not automatically stay discovery." *Red Barn Motors, Inc. v. Cox Enters., Inc.*, 2016 U.S. Dist. LEXIS 57876, 2016 WL 1731328, at *2 (S.D. Ind. May 2, 2016).

As a general matter, "courts disfavor stays of discovery because they bring resolution of the dispute to a standstill." *Am. Senior Communities, LLC v. Burkhart*, 2019 U.S. Dist. LEXIS 16021, 2019 WL 415614, at *2-3 (S.D. Ind. Feb. 1, 2019). Here, the Defendant requests an indefinite stay of discovery while their motion to dismiss is pending. Such a discovery stay risks substantial prejudice to the Plaintiff and should be denied.

The potential destruction of this evidence necessitates timely discovery consistent with the rules. Here, the Plaintiff's putative class is based off the fact that the TCPA claims are governed by the four year federal statute of limitations in 28 U.S.C. § 1658(a) ("Except as

otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues"); *See also Giovaniello v. ALM Media, LLC*, 726 F.3d 106, 115 (2d Cir. 2013) (four-year statute of limitations applies to private TCPA claims in federal court). However, not all telecommunications companies, including the companies that are used to engage in automated telemarketing, keep records of telephone activities for up to four years, and without an immediate gathering of records, the likelihood of destruction of this evidence increases with each passing day. Many of the major telecommunications providers will only retain call record information for 12-18 months, and presumably smaller telecommunications providers keep this information for an even shorter period. There has been no indication that these companies have preserved records of all telemarketing calls they, or any vendor they engaged, made to putative class members.

The risk to the putative class members' interests is not merely hypothetical. Multiple decisions have turned on the destruction of telephone records. For example, in *Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007), the court denied class certification in a TCPA fax case because "critical information regarding the identity of those who received the facsimile transmissions" was not available. Likewise, in *Pasco v. Protus IP Solutions, Inc.*, 826 F. Supp. 2d 825, 831 (D. Md. 2011), the court was compelled to grant the defendant's motion for summary judgment where Mr. Pasco was unable to obtain the "transmission data on which to support their claims that [the defendant] sent them the unsolicited faxes at issue."

As a result, courts regularly permit plaintiffs to commence discovery prior to a Fed. R. Civ. P. 26(f) conference related to these issues implicating non-parties in TCPA cases. *See e.g. Cooley v. Freedom Forever LLC et. al.*, Civil Action No. 2:19-cv-562, ECF No. 37 (D. Nev. July

19, 2019); *Cooley v. First Data Merchant Services, LLC et. al.*, Civil Action No. 19-cv-1185, ECF No. 32 (N.D. Ga. July 8, 2019); *Abante Rooter and Plumbing, Inc. v. Birch Commc'ns, Inc.* Civil Action No. 15-cv-03562, Dkt. No. 32 (N.D. Ga. 2016); *Mey v. Interstate National Dealer Services, Inc., et al.*, Civil Action No. 14-cv-01846, Dkt. No. 23 (N.D. Ga. Aug. 19, 2014). There are also other prejudices not associated with calling records that the Plaintiff will face from a stay. *See Sanaah v. Howell*, 2009 Civil Action No. 08-cv-02117-REB-KLM, U.S. Dist. LEXIS 35260, *2 (D. Colo. Apr. 9, 2009) ("with the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed."). Here, the Plaintiff is simply seeking to proceed in the ordinary course with discovery. In denying a motion to stay, another federal court considered this issue in a TCPA case:

> In addition, Orangetheory has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide class. Monetary damages, of course, do not by themselves constitute irreparable injury. Simon, on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages.
>
> …
>
> In the meantime, it is clear that critical evidence, including [*22] records from any third parties that Orangetheory may have contracted with for its telephone marketing, may be lost or destroyed.

*Simon v. Ultimate Fitness Grp., LLC*, Case No. 19-cv-890, 2019 U.S. Dist. LEXIS 147676, at *18, 21-22 (S.D.N.Y. Aug. 19, 2019).

A stay also compounds the already-substantial difficulty of gathering this information because over time relevant employees leave, class members die or move, documents or data are lost or corrupted, and memories fade. *See Young v. Peraza*, No. 1560968-CIV, 2015 WL

4639736, at *2 (S.D. Fla. Aug. 4, 2015) ("Were the Court to grant the Motion [to stay], Plaintiff would stand to suffer prejudice as the memories of eyewitnesses faded with the passage of time."); *Koppelman v. Galt Ocean Manor Condo. Ass'n, Inc.*, No. 16-CV-62175, 2016 WL 6777896, at *1 (S.D. Fla. Nov. 16, 2016) ("when discovery is delayed or prolonged it can create case management problems which impede the [c]ourt's responsibility. Furthermore, subjecting Plaintiff and putative class members to the stay Realgy propose is inherently prejudicial because it substantially delays their recovery. *See Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 234 (S.D.N.Y. 2016) ("Plaintiff have a strong interest in being fully compensated for their losses as soon as possible, and therefore, a stay is not appropriate."); *United States v. Swissco Properties within S. Dist.*, 821 F. Supp. 1472, 1475 (S.D. Fla. 1993) ("justice delayed is justice denied."); *Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1497 (S.D.N.Y. 1987) ("Plaintiffs have a substantial interest in the efficient conduct of this complex litigation").

Finally, a stay will delay Plaintiff's ability to seek the injunctive relief that is also at issue. When a case seeks both injunctive relief and damages, as this one does, this factor weighs more heavily against a stay than if the potential harm was tied only to monetary relief. *See e.g. Aldapa v. Fowler Packing Co., Inc.*, Case No. 11:5-CV-00420-DAD (SAB), 2016 WL 6124216, at *1 (E.D. Cal. Oct. 20, 2016) ("[S]taying a suit seeking injunctive relief against ongoing or future harm causes a more significant hardship against a plaintiff resisting a stay than a suit for damages."). The public has an interest in having this case proceed.

Given this fair possibility of harm to Plaintiff, Defendant must make a "clear showing" of the hardship it will suffer if the case proceeds. *Pascal v. Concentra, Inc.*, 2019 U.S. Dist. LEXIS 185193, at *8 (N.D. Cal. Oct. 24, 2019). Here, there is none. It is well-settled that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity .

. . .'" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). Defendant's generic contention of its prejudice absent a stay is without merit. Moreover, while Defendant asserts it would be burdensome to respond to the discovery, it does so without specificity. As the party objecting to the discovery, Defendant bears the burden to show that the Court should exercise its discretion in staying the case. *See, e.g., Deere v. Am. Water Works Co.*, 306 F.R.D. 208, 215 (S.D. Ind. 2015) ("The party objecting to a discovery request bears the burden to show why a particular discovery request is improper. Further, that party must show with specificity that the request is inappropriate." (Internal citations and quotation marks omitted)); *U.S. ex rel. Robinson v. Indiana Univ. Health Inc.*, No. 1:13-cv-02009-TWP-MJD, 2015 U.S. Dist. LEXIS 84642, 2015 WL 3961221, at *1 (S.D. Ind. June 30, 2015) ("A court may stay discovery through an exercise of its inherent authority to manage litigation or through its authority under Feder Rule of Civil procedure 26(c). The party seeking a stay has no absolute right to a stay; [*4] rather that party bears the burden of proof to show that the Court should exercise its discretion in staying the case." (Internal citations, quotation marks, and brackets omitted)). *Ind. Farm Bureau Ins. v. Amazon,* No. 1:19-cv-01568-JRS-TAB, 2020 U.S. Dist. LEXIS 253632, at *3-4 (S.D. Ind. June 25, 2020). Defendant has failed to do so here. Indeed, Defendant even notes in a footnote that it intends to object to the discovery propounded, and as such, it recognizes the protections afforded to it by the federal rules.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Stay.

RESPECTFULLY SUBMITTED AND DATED this October 11, 2023.

 /s/ *Anthony I. Paronich*
Anthony I. Paronich,
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
Email: anthony@paronichlaw.com
*Pro Hac Vice*

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2023, I electronically sent the foregoing to counsel of record for the Defendant.

 /s/ *Anthony I. Paronich*
Anthony I. Paronich, *Admitted Pro Hac Vice*