IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE MOORE, individually and on behalf of a class of all persons and entities similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NICOLE HUPP & ASSOCIATES, LLC, <br><br> Defendant. | No. 23-cv-4334 <br><br> Judge John J. Tharp, Jr. |

## ORDER

For the reasons set forth in the Statement below, defendant Nicole Hupp & Associates, LLC's motion to dismiss for failure to state a claim [7] is denied. The defendant's motion to stay discovery pending resolution of the motion to dismiss [9] is therefore denied as moot. The defendant's answer is due November 15, 2023. This matter is referred to the assigned magistrate judge for discovery scheduling and supervision, and for any settlement conference the parties may seek.

## STATEMENT

Plaintiff George Moore filed a putative class action complaint against defendant Nicole Hupp & Associates, LLC ("Hupp"). The complaint asserts that Hupp, an insurance agent for Allstate, violated the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, and related regulations, by making at least two unwanted telemarketing calls to the plaintiff even though his phone number was listed on the national do-not-call registry. *See* 47 C.F.R. § 64.1200(c)(2) (regulation promulgated by FCC that imposes certain restrictions on telephone solicitations to persons listed on the national do-not-call registry, which is maintained by the federal government).

In pursuing this claim, Moore seeks to represent a class of similarly situated persons. He proposes the following class definition:

> All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

Compl. ¶ 40.

Hupp has filed a motion to dismiss Moore's class action complaint pursuant to Fed. R. Civ. P. 12(b)(6). It also seeks to strike Moore's class action allegations as an alternative to dismissal. For the reasons that follow, Hupp's motion to dismiss and its motion to strike in the alternative are both denied.

I. **Hupp's Rule 12(b)(6) Motion to Dismiss**

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiffs need not plead facts corresponding to every element of a legal theory. *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 848 (7th Cir. 2017).[1] Instead, the plaintiff need only plead a plausible claim. *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 800 (7th Cir. 2018). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). In deciding a motion to dismiss, the Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.*

Hupp attacks the plausibility of the complaint's TCPA claim on two grounds. She first argues that Moore's complaint fails to plausibly allege that Hupp used an automatic telephone dialing system ("ATDS") or prerecorded voice, and it therefore fails to state a cognizable TCPA claim. Second, Hupp contends that Moore consented to receiving Hupp's calls, a fact which vitiates his TCPA claim. Both of these arguments can be dispatched readily.

---

[1] Hupp cites *Reynolds v. CB Sports B., Inc.*, 623 F.3d 1143, 47 (7th Cir. 2010) for the following proposition: "A plaintiff must allege that **all elements of his claim are satisfied** but cannot survive a Rule 12(b)(6) motion to dismiss by only alleging legal conclusions." Memo. at 5, ECF No. 6 (emphasis added). But that case does not stand for the emphasized portion of Hupp's proposition. The case law in the Seventh Circuit is clear: "[T]he Federal Rules of Civil Procedure have required plaintiffs to plead claims rather than facts corresponding to the elements of a legal theory." *Chapman*, 875 F.3d at 848. Accordingly, since a plaintiff is not even required "to identify the applicable law" in his complaint, Rule 8 does not and cannot require "that complaints contain all legal elements (or factors) plus facts corresponding to each." *Id.*

This is not the only instance of a mis-citation or misrepresentation of precedent in Hupp's brief. Elsewhere, Hupp cites *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 460 (7th Cir. 2020) as the source of the following quotation: "In order to assert a valid claim under the TCPA, a plaintiff must declare that they received a call from a sender employing an ATDS, which is a system capable of storing and generating numbers using a random sequential number generator." Memo. at 6. Neither the quoted language nor the general sentiment of the proposition appear in that case. Counsel is advised to exercise greater care when citing and quoting case law in future proceedings before the Court.

A.    Lack of ADTS Allegations

Hupp's first argument—that Moore failed to allege Hupp's use of ATDS—is misplaced. It seeks to undermine Moore's ability to state a plausible subsection (b) *robocalling* claim under the TCPA, but not his ability to state a *national-do-not-call-registry violation* claim under TCPA subsection (c) and the FCC's corresponding regulations, 47 C.F.R. § 64.1200(c)(2). In short, Hupp is attacking the plausibility of the wrong type of TCPA claim.

Subsection (b) of the TCPA relates to "robocalling" practices. It "prohibits the use of an 'automatic telephone dialing system' to call or text any cellular phone without the prior consent of the recipient." *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 460 (7th Cir. 2020) (quoting 47 U.S.C. § 227(b)(1)). That subsection also includes an express private right of action and statutory damages provision. 47 U.S.C. § 227(b)(3).

Apart from subsection (b)'s robocalling restrictions, however, the TCPA, in subsection (c), directs the FCC to promulgate regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Subsection (c) also provides for "a private right of action for a violation of the FCC's implementing regulations," distinct from subsection (b)'s private right of action. *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 375 (2012); 47 U.S.C. § 227(c)(5).

In keeping with Congress's directives in 47 U.S.C. § 227(c), the FCC issued regulations that, among other things, created the national do-not-call registry, required telemarketers to maintain their own internal do-not-call lists that are based on the national registry, and prohibited telemarketers from soliciting residential telephone subscribers who have registered their numbers on the national registry. 47 C.F.R. § 64.1200(c)(2). The regulations provide telemarketers with safe harbor from liability if they can demonstrate that (i) their "violation [wa]s the result of error and that as part of its routine business practice, it" met certain standards for complying with the national do-not-call rules, (ii) it obtained the subscriber's consent prior to calling, or (iii) the telemarketer had a personal relationship with the recipient of the call. 47 C.F.R. § 64.1200(c)(2)(i)-(iii). Courts in this District have recognized that violations of the FCC's rules in section 64.1200(c) can give rise to a private cause of action under 47 U.S.C. § 227(c)(5). *See, e.g.*, *Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823 at *2-3 (N.D. Ill. Dec. 7, 2022). None have concluded that cases brought pursuant to the TCPA's subsection 227(c)(5) require a showing that the telemarketer used ADTS.

The cases to which Hupp cites in support of its missing-ADTS-allegations argument concern claims arising under the robocalling provisions of the TCPA. Those provisions exist for a particular purpose. "Automated or prerecorded telephone calls made to private residences, Congress found, were rightly regarded by recipients as an invasion of privacy." *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 373 (2012) (cleaned up). "The [TCPA] responded to a torrent of vociferous consumer complaints about intrusive robocalls. A growing number of telemarketers were using equipment that could automatically dial a telephone number and deliver an artificial or prerecorded voice message. At the time, more than 300,000 solicitors called more than 18 million Americans every day." *Barr v. Am. Assn. of Political Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020). "In plain English, the TCPA prohibit[s] almost all robocalls to cell phones," except for

3

certain narrow exceptions (*e.g.*, robocalls to collect debts owed to the government) and for calls that the recipient previously expressly consented to receiving. *Id.* at 2344-45.

The do-not-call-registry provisions are different. They provide **broader protections**—including protections from intrusive non-ADTS/robocalls—to those who have taken the ***affirmative step to protect their privacy*** by registering their phone numbers on the registry. If subsection (c) were limited to robocalls only, then there would be little difference in the protections afforded to those who took the affirmative steps and those who did not. This logic is reflected in the broad language Congress and the FCC used in enacting the do-not-call provisions. The pertinent regulation, 47 C.F.R. § 64.1200(c)(2), does not limit violations of do-not-call rules to those involving ATDS; it applies to "any telephone solicitation." *Id.* at § 64.1200(c). Nor does 47 U.S.C. § 227(c)(5) have any language limiting its application to calls made using any automated system or prerecorded voice.

For these reasons, Hupp has failed to demonstrate that the complaint's lack of any ADTS or prerecorded voice allegations render Moore's TCPA claim implausible. The Court therefore declines to dismiss the complaint on that basis.

      **B.**    **Moore's Consent**

Hupp's second argument for dismissal is equally unavailing and misplaced. Hupp contends: "On May 10, 2023 . . . Moore visited https:///www.myinsurehub.co/. The online form requested various details from the consumer . . . . At the bottom of the page, prior to submitting the online form, he checked a mandatory boxed [sic]," which stated that he agreed, *inter alia*, "to receive telemarketing calls . . . even if my telephone number is a mobile number that is currently listed on any state, federal or corporate Do Not Call list." Memo. at 7-8.

For the Court to dismiss Moore's complaint on this ground would be inappropriate. Hupp asks the Court to essentially reverse the Rule 12(b)(6) standard and disregard Moore's well-pleaded allegation that he "never consented to receive calls from Allstate," Compl. ¶ 22, while instead assuming the truth of the unsupported factual assertions Hupp sets forth in its brief. Even if Hupp had supported its assertions with documentary evidence or otherwise, the Court is not in the business of fact finding during the pleading stage. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). While the facts Hupp raises may ultimately bear on the merits of the case at a later stage, Hupp's assertions are irrelevant to the sufficiency of Moore's complaint. Hupp's motion to dismiss fails for that reason.

**II.**    **Motion to Strike Class Allegations**

As an alternative to dismissal, Hupp seeks to strike Moore's class action allegations from the complaint. It argues that it is evident from the face of Moore's complaint that he cannot sustain a viable class action.

      **A.**    **Striking Class Allegations at the Pleading Stage**

There is no categorical rule barring courts from reviewing and, if appropriate, striking class allegations before a plaintiff moves for class certification. *See Kasalo v. Harris & Harris, Ltd.*,

656 F.3d 557, 563 (7th Cir. 2011). Pursuant to Fed. R. Civ. P. 23(c)(1)(A), the court must determine whether to certify a class "[a]t an early practicable time after a person sues" as a class representative. This Rule, in conjunction with "Rules 12(f) and 23(d)(1)(D), empowers the Court to dismiss or strike class allegations at the pleading stage." *Murdock-Alexander v. Tempsnow Empl.*, No. 16-CV-5182, 2016 WL 6833961 at *3 (N.D. Ill. Nov. 21, 2016) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim[.]")).

But "it is the rare case in which it is clear from the pleadings that the plaintiffs may not proceed as a class." *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263 (W.D. Wis. 2013); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) ("Most often it will not be 'practicable' for the court to [decide the issue of class certification] at the pleading stage . . .). "[W]here the dispute is factual and discovery is needed to determine whether a class should be certified, a motion to strike the class allegations at the pleading stage is premature." *Murdock-Alexander*, 2016 WL 6833961 at *4 (cleaned up).

### B. Whether Class Certification Requires Discovery in this Case

Hupp makes three arguments why the Court should strike Moore's class allegations without discovery. Each is premature.

The Court starts with Hupp's predominance argument. "Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner v. Northshore U. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). Hupp contends, "Plaintiff's class certification should be stricken because whether consent was obtained by each putative class member is a highly individualized inquiry. Predominance requires that common questions predominate over individual questions in resolving class members' claims." Memo. at 10. But if that were the case, then no TCPA claim—or any claim that could be defeated by a consent defense—could ever get past the pleading stage as a potential class action. Discovery is needed to determine whether the individualized issue of consent actually precludes certification of a class. This is why, "[i]n TCPA cases, '[c]ourts determine whether issues of individualized consent defeat commonality and predominance . . . on a case-by-case basis after evaluating the specific evidence available to prove consent.'" *Fauley v. Heska Corp.*, 326 F.R.D. 496, 507 (N.D. Ill. 2018) (quoting *Physicians Healthsource, Inc. v. A-S Medication Sols.*, LLC, 318 F.R.D. 712, 725 (N.D. Ill. 2016)) (alterations in original). "When a defendant presents specific evidence showing that a significant percentage of the putative class consented, issues of individualized consent predominate." *Id.* But now is not the time for Hupp to present such evidence. Now is the time to examine the pleadings. And Moore's complaint does not, on its face, belie the preponderance of common issues among the putative class.

The Court turns to Hupp's next argument, which is that "Plaintiff offers no facts to support his conclusory statement regarding an alleged nationwide scheme." Memo. at 3, 10-11.[2] But Moore is not required to offer any facts to support his statement at this stage.[3] "[P]laintiffs generally have the burden of demonstrating that they meet the requirements of Rule 23. Class action defendants, however, are often in control of the information plaintiffs need to meet that burden. Thus, discovery is often appropriate, even necessary." *Guzman v. N. Illinois Gas Co.*, No. 09 C 1358, 2009 WL 3762202 at *2 (N.D. Ill. Nov. 6, 2009). "[A]t the pleadings stage, [proposed class action plaintiffs] only are required to allege that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) & (3) are met. They need not establish or prove that class certification is proper." *Perez v. City of Chicago*, No. 13-CV-4531, 2015 WL 5163165 at *5 (N.D. Ill. Sept. 2, 2015) (citing *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (rejecting argument that class action allegations were too conclusory and failed to establish numerosity, because class action allegations are subject to the federal notice-pleading regime)). Hupp's challenge on this basis is therefore also premature.

Finally, Hupp maintains that "Plaintiff does not fall into the class of consumers the TCPA was enacted to protect," because he consented to receiving the calls and actually engaged with the telemarketer during the second call. Memo. at 11-12. This argument rests solely on Hupp's version of disputed facts. For the same reasons why the Court cannot credit Hupp's version of the facts in deciding the motion to dismiss Moore's claim, *see supra* section I.B., it cannot make findings of fact in favor of Hupp to strike Moore's class allegations. *See Ladik*, 291 F.R.D. at 269 ("[I]f the defendant moves to dismiss the class allegations before discovery, the court must evaluate the motion using a standard similar to that of Fed. R. Civ. P. 12(b)(6).").

Dated: October 31, 2023

John J. Tharp, Jr.
United States District Judge

---

[2] Hupp, once again, misrepresents the case law it cites, this time quoting language from Judge Wilkinson's dissent in *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 123 (4th Cir. 2013) while presenting it as language from the majority opinion. While the Court will, at this point, assume that these misrepresentations are not intentional, they nevertheless are sloppy and reflect poorly on counsel's professionalism. The Court expects—and requires—better.

[3] In any event, the Court must not only take Moore's allegations as true, but it must also make reasonable inferences in Moore's favor based on those allegations. Taking Moore's allegations as true, again, he received at least two unsolicited and unconsented-to telemarketing calls from Hupp despite his phone number's registration on the national do-not-call list. It is a reasonable inference that, if Hupp engaged in such conduct toward him, then it also engaged in such conduct against others.